NATIONAL LABOR RELATIONS BOARD
v. COLUMBIAN CARBON CO.

No. 3884.

United States Court of Appeals
Tenth Circuit.

Nov. 7, 1949.

Robert Fousek, Kansas City, Mo. (David P. Findling, A. Norman Somers, Owsley Vose and Joseph I. Nachman, Washington, D. C., were with him on the brief), for petitioner.

James C. Sanders, Amarillo, Tex. (Morgan, Culton, Morgan & Britain, Amarillo, Tex., were with him on the brief), for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is the conventional proceeding · in which the National Labor Relations Board seeks enforcement of its order requiring respondent, Columbian Carbon Company, to cease and desist from discouraging membership in International Union of Operating Engineers, A. F. of L., or other labor organizations, of its employees, or in any other manner interfering, etc. with its employees in the exercise of their right to self organization and to take affirmative action (a) by offering Lee Roy Barker immediate reinstatement without prejudice to his rights; (b) to make him whole for any loss of pay he may have suffered by virtue of his unlawful discharge; and (c) post appropriate notices. The application is brought under the applicable provisions of the National Labor Relations Act, 29 U.S. C.A. § 160(e).

The Board made findings of fact finding violations of employees' rights by respondent. The controversy arose out of an organization proceeding in which Lee Roy Barker participated in an effort to unionize respondent's employees. Barker was discharged while the unionization movement was on. It was charged and found by the Board that he was wrongfully discharged because of his unionization activities and that in other ways respondent sought to intimidate its employees in the exercise of their rights, under the Act, by threats of reprisals and various forms of punishment.

The evidence, as in all such cases, was in sharp conflict. Our only function is to search the record to determine whether the Board's findings are supported by substantial evidence. Since the legal principles which control the decisions in such cases as this are well established, no contribution to the law in general would result in setting out the evidence in detail, nor would any useful purpose be served in this case by narrating the evidence which we think supports the Board's findings. This would only result in further burdening the already overburdened legal publications with material of no lasting value. It is sufficient to say that we have carefully examined the entire record and have reached the conclusion that the findings of the Board are sustained thereby and that the order should be enforced.

■ Respondent complains of the action of the Board in rejecting two letters written by Bond and Milton, respectively,[1] giving their reason for Barker's discharge after they had been received by the examiner. Respondent offered testimony that it was its custom to require written reports from its supervisory employees when an employee was discharged. It is contended that these two letters were admissible as reports made pursuant to such requirements. We do not think the Board erred in refusing to receive these two letters. It seems clear that these letters or records were not made in the usual, ordinary course of business. The entries, if such they may be termed, were not made at the time of the discharge. They were not made until six days thereafter. They indicate that they were made in response to an inquiry. Thus, Bond's letter begins, as follows:

"This is in regards to Mr. Lee R. Barker who was employed by the Columbian Carbon Company. He was discharged May 10, 1946 because of being fussy and overbearing with his fellow man and his immediate supervisors."

Milton's letter, after stating the reasons for the discharge concludes by saying:

"Hoping that this will help clarify matters, I am

"Respectfully yours, * * *."

It is worthy of note that the letters were addressed to the Supervisor at "Post Office Box 291, Ulysses, Kansas" indicating that they were written outside the plant and were sent by mail. It is clear that they

---

1. "May 16, 1946

"TO: J. B. Stewart Plant Supervisor
"Columbian Carbon Company
"P. O. Box 291
"Ulysses, Kansas.
"This is in regards to Mr. Lee R. Barker who was employed by the Columbian Carbon Company. He was discharged May 10, 1946 because of being fussy and overbearing with his fellow man and his immediate supervisors.
"On several occasions the warehouse foreman, Mr. Otis Milton, came to me and stated that Mr. Barker was very fussy and hard to get along with. I told Mr. Milton that I would talk to Mr. Barker which I did on April 8th, telling him that I had received complaints from his foreman Mr. Milton, and that he had to stop this fussing. That if he wasn't satisfied I'd rather he would quit, that I did hate to fire a man and more especially with a family the size of Mr. Barker's. He promised me faithfully that he would stop it.
"On April 12th Mr. Milton came to me stating that Mr. Barker came into the Warehouse and gave him a cussing and that he was tired of it. I gave Mr. Milton authority to fire Mr. Barker, which he did. Mr. Barker came to me wanting to know why he was fired. I told him it was for keeping up a *distrubance* on the job and cussing Mr. Milton which we can't allow on the job.
    "Sincerely,
    "/s/ Rowan Bond
    "Rowan Bond
    "Plant Production Foreman."

"May 16, 1946

"Columbian Carbon Co.
"P. O. Box No. 291
"Ulysses, Kansas
"Attention: Mr. J. B. Stewart
"The man in question, Lee R. Barker, was fired from this plant on Friday, May 10, 1946. He was fired for continually complaining and griping about the way things were done. By things, I mean the promotion of men to different jobs. Mr. Bond had charge of the promotion, but Mr. Barker would eat me out for things over which I had no control.
"I had warned him at different times that he had better keep his mouth shut. Other men, including shift foreman, had also warned him. Only three or four days before he was fired, Mr. Bond took him outside and talked to him for some time about his continual complaining and attitude toward others with whom he worked.
"He also made it hard on the men with whom he worked. He would throw off on them by not doing his full duty.
"Hoping that this will help clarify matters, I am
    "Respectfully yours,
    "/s/ Otis Milton
    "Otis Milton
    "Warehouse Foreman."

were not made in the usual and ordinary course of business and at the time of the occurrence of the transactions of which they purport to speak.

The Board did not err in refusing to see them or to consider them.

The order of the Board will, therefore, be enforced.